# In the United States Court of Federal Claims

No. 22-297
Filed: April 21, 2026

|  |  |
|---|---|
| DEVENDRA KUMAR JAIN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

*Devendra Kumar Jain*, *pro se*, New Hyde Park, New York, for plaintiff.

*David S. Friedman*, United States Postal Service, Office of the General Counsel, Washington, D.C., for defendant. With him on the brief was *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, *Claudia Burke*, Deputy Director, *Daivd M. Kerr*, Senior Trial Counsel, United States Department of Justice.

**OPINION & ORDER**

Plaintiff Devendra Kumar Jain, proceeding *pro se*, filed this suit against the United States government, alleging that a settlement agreement entered with the United States Postal Service (the "Postal Service") is void or voidable and that the Postal Service breached the settlement agreement in numerous ways. The government filed a motion for summary judgment, arguing that (1) the settlement agreement is a valid, binding, and enforceable contract; and (2) no genuine dispute of material fact exists that the Postal Service complied with the terms of the settlement agreement. *See* Defendant's Motion for Summary Judgment, Doc. No. 113 [hereinafter "SJ Motion"]. For the following reasons, the Court **GRANTS** the government's motion, Doc. No. 113, and **DISMISSES** Mr. Jain's complaint, Doc. No. 67, **WITH PREJUDICE**.

## I.    BACKGROUND

The facts animating this suit are identical to the facts at issue in a separate action filed by Mr. Jain in the United States District Court for the Southern District of New York. *See Jain v. Tulino*, Case No. 22-2751, 2025 WL 2774260 (S.D.N.Y. Sept. 29, 2025). To set the scene, however, a brief recitation follows.

Mr. Jain has worked for the Postal Service for over thirty years. *Id*. at *1. In 2007, Mr. Jain was promoted to a supervisory position at the New York Morgan Processing and Distribution Center where he managed more than twenty employees. *Id*. In 2015, supervisors of Mr. Jain suspected that he had submitted fraudulent time records that inflated the number of hours he worked. An investigation began and Mr. Jain was placed on administrative leave with full pay. *Id*. The investigation substantiated the Postal Service's suspicions and concluded that Mr. Jain had falsified his time records. *Id*. Given the seriousness of Mr. Jain's misconduct, Postal Service personnel recommended his termination. However, Mr. Jain negotiated and voluntarily entered into a settlement agreement and general release (the "Settlement Agreement") in July 2016. *See* SJ Motion, Ex. A. Under the Settlement Agreement, the Postal Service agreed not to terminate Mr. Jain for his fraudulent misconduct, not to restrict him from applying for future promotions, and to expunge all discipline in his official personnel folder, among other things. *Id*. at 2. In exchange, Mr. Jain voluntarily agreed to a demotion from a supervisory position to a mail handler position, among other concessions. *Id*.

After the parties entered the Settlement Agreement, the Postal Service issued Personnel Form 50—a personnel management document that records changes in employment status—reflecting that Mr. Jain had been demoted from a level 17 supervisor to a level 4 mail handler. *See* SJ Motion, Ex. D at USPS0000388. In the months after signing the Settlement Agreement, Mr. Jain applied for at least thirty-three job promotions. *Jain*, 2025 WL 2774260 at *1. Although he received at least two interviews, Mr. Jain was ultimately not selected for any of the positions he applied for. *Id*. Mr. Jain then filed numerous complaints with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that his lack of promotion was the product of discrimination and retaliation based on his race, religion, or prior protected activity. *See* June 22, 2021 EEOC Decision, Doc. No. 113-6 at 18. Mr. Jain also accused nearly forty Postal Service professionals of slighting him. *Id*. Following an investigation, the administrative law judge assigned to the case found no evidence of discrimination or retaliation. *Id*. at 18–23. The Postal Service adopted the administrative law judge's findings and, following an appeal by Mr. Jain, the EEOC affirmed the Postal Service's decision to adopt the administrative law judge's finding of no discrimination. *Id*. at 22.

Undeterred, Mr. Jain filed suit in this Court raising similar allegations. Here, Mr. Jain asserts two claims for relief. *See* Compl., Doc. No. 67. First, Mr. Jain requests a finding that the Settlement Agreement is void or voidable. Mr. Jain raises various legal and factual allegations in support of this claim, including that (i) Postal Service representatives lacked authority to bind the Agency in entering the Settlement Agreement; (ii) the Settlement Agreement did not comply with the alleged requirements of the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act ("OWBPA"); (iii) the Settlement Agreement lacks a "breach clause," which Mr. Jain asserts is required under 29 C.F.R. § 1614.504; (iv) and that Mr. Jain "was under duress" when he signed the Settlement Agreement. *Id*. ¶¶ 8, 19–21.

Second, Mr. Jain claims that the Postal Service breached the Settlement Agreement in almost a dozen different ways. The more noteworthy allegations include Mr. Jain's claim that the Postal Service (i) failed to promote him; (ii) placed restrictions on his ability to apply for promotion and management positions; (iii) failed to expunge disciplinary records in his employment file; (iv) set Mr. Jain's salary as a level 4 instead of a level 6; and (v) failed to explicitly state in the

Settlement Agreement that a voluntary demolition meant that Mr. Jain's seniority would be reduced. *Id*. ¶¶ 4, 9–18.

## II.    PROCEDURAL HISTORY

### 1.    The First District Court Case

In addition to his various EEOC complaints, Mr. Jain has filed at least two lawsuits in the United States District Court for the Southern District of New York. The first suit was filed in May 2018 against the Postal Service and the Postmaster General in her official capacity. *See Jain v. Brennan et al.*, Case No. 18-4446, Doc. No. 1. After Mr. Jain amended his complaint, the government moved to dismiss for lack of subject matter jurisdiction. *Id.*, Doc. Nos. 19–22. The magistrate judge assigned to the case issued a report recommending that the district court grant the government's motion to dismiss and provide Mr. Jain with an opportunity to cure the jurisdictional defects in his pleading by clearly and expressly waiving any claims for monetary relief in excess of $10,000 in order for the district court to exercise jurisdiction. *Id.*, Doc. No. 39. The district court judge presiding over the case, Judge Paul A. Engelmayer, adopted the magistrate judge's report and recommendation and dismissed the complaint with leave to amend. *Id.*, Doc. No. 40.

After Mr. Jain filed a third amended complaint that continued to assert claims for monetary relief against the government in excess of $10,000, the parties submitted a joint stipulation to the district court requesting transfer of the case to the Court of Federal Claims. *Id.*, Doc. No. 55. The district court subsequently transferred the case to this Court. *Id.*, Doc. No. 56. On March 15, 2022, the undersigned judge was assigned to this case. *Jain v. USA*, Case No. 22-297, Doc. No. 59.

### 2.    This Case

Mr. Jain filed his operative complaint in this case on April 22, 2022. *See* Compl., Doc. No. 67. As discussed above, Mr. Jain requests a finding that the Settlement Agreement is void or voidable and that the Postal Service breached the Settlement Agreement in a variety of ways. Compl., ¶¶ 4, 8–21. On September 9, 2022, the government filed an answer, denying the material allegations raised in the complaint. *See* Answer, Doc. No. 74. The Court thereafter issued an order setting a schedule for discovery and dispositive motions, which was extended numerous times. *See* Doc. Nos. 78, 83, 86, 88, 90, 99, 102, 104, 106, 109.

In May 2025, Mr. Jain requested that the Court stay proceedings in this case until the United States District Court for the Southern District of New York reached a decision in the second suit filed by Mr. Jain in the Southern District of New York. *See Jain v. Tulino*, Case No. 22-2751; s*ee also* Joint Status Report, Doc. No. 110. The government did not oppose the stay and the Court stayed proceedings until the district court reached a decision in *Tulino*. *See* June 5, 2025 Order, Doc. No. 111.

### 3.    The Second District Court Case

In *Tulino*, Mr. Jain asserted claims against the Postal Service for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2001e, et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), and 42 U.S.C. § 1981. *See* Case No. 22-

2751, Doc. No. 36.  The thrust of Mr. Jain's allegations there were that dozens of Postal Service professionals conspired to discriminate and retaliate against Mr. Jain because of his race, national origin, race, and prior EEOC complaint activities.  *See generally id*.  Mr. Jain further alleged that the Postal Service discriminated and retaliated against him by failing to promote him for the various positions that he applied for.  *Id*.

On September 29, 2025, the Southern District of New York issued an opinion in *Tulino* that dismissed each of Mr. Jain's claims.  *Jain v. Tulino*, 2025 WL 2774260 (S.D.N.Y. Sept. 29, 2025), *appeal dismissed* (Feb. 12, 2026).  The district court concluded that Mr. Jain's discrimination claims failed because he "has not adduced any evidence that he was qualified for the positions he did not receive."  *Id*. at *9.  The district court further concluded that Mr. Jain's claims alleging a hostile work environment, age-related discrimination, and discrimination under § 1981 failed.  *Id*.

### 4. The Court Lifts the Stay and Orders Summary Judgment Briefing

Although the district court dismissed all of Mr. Jain's claims in September 2025, neither party updated this Court on developments in the district court litigation.  Instead, the Court undertook an independent review of the status of that litigation and discovered it had been dismissed months earlier.  The Court subsequently issued an order in January 2026 directing the parties to submit their views on how this case should proceed given the resolution of the *Tulino* litigation.  The government's submission proposed that Mr. Jain's pending claims here could be resolved on summary judgment.  *See* Defendant's Status Report, Doc. No. 112.  The government further proposed a schedule for summary judgment briefing.  *Id*.  Mr. Jain declined to file any submission with the Court.

The Court subsequently issued an order lifting the stay and adopting the government's proposed schedule for summary judgment briefing.  *See* Feb. 12, 2026 Scheduling Order.  The order directed the government to file its opening summary judgment motion by March 10, 2026, Mr. Jain to file a response or cross-motion for summary judgment by April 7, 2026, and the parties to file responses and replies by April 21, 2026.  The government timely submitted its motion, seeking dismissal of Mr. Jain's claims in their entirety.  *See* SJ Motion.  Mr. Jain declined to file a response to the government's motion or his own cross-motion explaining why his complaint should not be dismissed.

## III.    JURISDICTION & STANDARD OF REVIEW

### 1. Jurisdiction under the Tucker Act

The Tucker Act confers jurisdiction upon the Court of Federal Claims and waives the federal government's sovereign immunity for certain actions for monetary relief brought against the United States. 28 U.S.C. § 1491.  Those actions include claims "founded … upon any express or implied contract with the United States…."  § 1491(a)(1).  The Tucker Act is merely a jurisdictional statute and does not create a substantive cause of action.  *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed. Cir. 2005).  Thus, "a plaintiff must identify a separate source of substantive law that creates the right to monetary damages."  *Id*.

Contract law supplies a separate source of substantive law compensable under the Tucker Act. *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). In the typical contract dispute, "the presumption that money damages are available satisfies the Tucker Act's money-mandating requirement." *Higbie v. United States*, 778 F.3d 990, 993 (Fed. Cir. 2015) (citing *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011)). However, the government has not consented to suit under the Tucker Act for every contract and the presumption that monetary damages are available in contract cases does not always exist. For instance, "[a] contract expressly disavowing money damages would not give rise to Tucker Act jurisdiction…" *Holmes*, 657 F.3d at 1314.

Here, Mr. Jain asserts that the Settlement Agreement supplies a separate source of substantive law upon which jurisdiction exists in this Court. *See, e.g.,* Compl., at 3. The Court agrees. Although the Settlement Agreement provides that Mr. Jain "agrees to waive any and all back pay … and any attorney's fees and costs *or any other monetary damages that might be available or that could be requested with respect to any aspect of this Agreement,"* the Court finds that this language only covers the backwards-looking conduct compromised under the Settlement Agreement. *See* SJ Motion, Ex. A at 3 (emphasis added). By contrast, the Court finds that monetary damages would still be available for any forward-looking breaches of the Settlement Agreement. In this suit, Mr. Jain alleges that subsequent actions taken by the Postal Service breached the terms of the Settlement Agreement. *See* Compl., ¶¶ 4, 9–18. Those allegations are enough to satisfy the jurisdictional requirements under § 1491(a)(1).

### 2. Summary Judgment

Summary judgment is "*mandate[d]* . . . after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). There is no genuine factual dispute in that situation "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Put differently, a court may grant summary judgment when the materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a), (c). The nonmovant bears the burden of providing sufficient evidence to establish a genuine issue of a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "genuine" dispute arises if the factfinder may reasonably resolve such issue "in favor of either party," and a fact is "material" if it might "affect the outcome of the case under the governing law." *Id.*

### IV.    DISCUSSION

### 1. The Settlement Agreement is a Valid, Binding, and Enforceable Contract.

As an initial matter, the Court must address the four arguments raised by Mr. Jain that attack the validity of the Settlement Agreement as a valid, binding, and enforceable contract. For the reasons explained below, the Court rejects each of these arguments.

Mr. Jain first alleges that the Settlement Agreement is "wholly voidable" because the two agency representatives that executed the agreement on the Government's behalf—human resources manager Vanessa Duncan-Smith and senior agency counsel Kenneth Levine—lacked authority to bind the Postal Service. *See* Compl., ¶ 8. The Government disagrees, claiming that the employees possessed authority to bind the Postal Service. *See* SJ Motion at 12. The Government further points out that whether these employees exercised valid authority in signing the Settlement Agreement on the government's behalf is legally irrelevant because the "Postal Service will ratify the allegedly unauthorized contract." *Id*.

In determining whether a contract is void *ab initio* or voidable, courts typically consider whether the contract has been made under conditions that would justify giving one of the parties a choice as to validity and thus deeming it voidable. The classic conditions that support invoking this doctrine include contracts with infants or whether enforcement of the contract would violate the law or public policy. *Koby v. United States*, 47 Fed. Cl. 99, 104 (2000) (quoting *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 431–32 (1998) (Breyer, J., concurring)); *see also Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1371 (Fed. Cir. 2013) (stating that the general inquiry for determining whether a contract is void *ab initio* is "whether [] illegal conduct tainted the contract," and noting that "[d]etermining whether illegality taints a contract involves questions of fact") (internal quotation marks omitted).

As the Government points out, a government agent's lack of authority to bind the government provides the *government* with the option to void the contract rather than the *counterparty*. *See, e.g.*, *Empresas Electronicas Walser Inc. v. United States*, 650 F.2d 286 (Ct. Cl. 1980), *cert. denied,* 449 U.S. 953 (1980) (an agency "can disavow" the unauthorized promises of its agents); *Perri v. United States*, 53 Fed. Cl. 381, 401 (Fed. Cl. 2002) (quoting *Janowsky v. United States*, 23 Cl. Ct. 706, 715 (Cl. Ct. 1991), *reversed in part on other grounds*, 989 F.2d 1203 (Fed. Cir. 1993) ("A contract is voidable *at the option of the government* when the official who made the agreement lacked actual authority to bind the government") (emphasis added) (internal citation omitted)). Under these circumstances, the Postal Service is the only contracting party capable of disavowing the Settlement Agreement on the grounds that the officials who signed the contract lacked valid governmental authority. The government has declined to do so here. *See* SJ Motion at 8.

The Court also rejects Mr. Jain's second argument that the Settlement Agreement is voidable because it did not comply with ADEA or the OWBPA. *See* Compl. ¶ 19. According to Mr. Jain, "[a]ll settlement agreement[s] [sic], regardless of whether age is raised as a basis, must comply with the requirements of" the ADEA and the OWBPA to include waiver provisions in 29 U.S.C. § 626(f)(1)(A)-(E). *Id*. Not so.

The OWBPA provides that "[a] waiver in settlement of a charge filed with the Equal Employment Opportunity Commission, or an action filed in court by the individual or the individual's representative, *alleging age discrimination* of a kind prohibited under section 623 or 633a of this title may not be considered knowing and voluntary unless at a minimum (A) subparagraphs (A) through (E) of paragraph (1) have been met; and (B) the individual is given a reasonable period of time within which to consider the settlement agreement." 29 U.S.C. § 626(f)(2) (emphasis added). These statutory provisions, however, only apply to age discrimination

claims under the ADEA.  In this suit, Mr. Jain is not pursuing an ADEA claim.  Likewise, the Settlement Agreement did not resolve any claims of age discrimination.  *See, e.g.*, Compl., ¶¶ 9–12, 14–15, 18, 20–21; *see also Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426 (1998) ("An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements.").  Thus, the OWBPA's requirements governing a knowing and voluntary waiver do not apply here.

Mr. Jain next argues that the Settlement Agreement is "[i]llegal, invalid, null and void" because "USPS failed to put a 'breach clause' in [the] agreement."  *Id*. ¶ 20.  According to Mr. Jain, a "breach clause" is a mandatory term in any settlement agreement under 29 C.F.R. § 1614.504.  *Id*.  Mr. Jain is wrong.  Section 1614 does not require that a settlement agreement include a "breach clause"—whatever that is—but rather promulgates the unremarkable rule that settlement agreements "knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties."  29 C.F.R. § 1614.504(a).  The regulations further prescribe the procedures for enforcing a valid and binding settlement agreement.  *See generally* 29 C.F.R. § 1614.504.

Finally, the Court disagrees with Mr. Jain that he "was under duress" when he signed the Settlement Agreement.  *See* Compl., ¶ 21.  Mr. Jain claims that a finding of duress is appropriate because the Postal Service advised Mr. Jain that he would remain on administrative leave for his fraudulent misconduct and his case would proceed to a formal hearing before the Merits System Protection Board if he did not sign the Settlement Agreement.  Those allegations fall far short of clearing the high bar for establishing duress.  *Starr Int'l Co. v. United States*, 106 Fed. Cl. 50, 77 (2012), *aff'd in part, vacated in part on other grounds*, 856 F.3d 953 (Fed. Cir. 2017) ("This Court's jurisprudence has shown that the bar for establishing duress is a high one" and "[a]bsent wrongful conduct, economic pressure and the threat of considerable financial loss do not constitute duress").  These allegations, at most, merely speak to the foreseeable professional and financial consequences that Mr. Jain would confront if he did not agree to the terms of the Settlement Agreement.

### 2.  The Court Concludes that No Evidence Exists Showing that the Government Breached the Settlement Agreement.

In addition to attacking the validity of the Settlement Agreement, Mr. Jain also asserts ten different grounds for breach of contract against the Postal Service under the Settlement Agreement.  The Court addresses each of Mr. Jain's claims below and concludes that Mr. Jain cannot establish any of these claims as a factual or legal matter.

First, Mr. Jain argues that the Postal Service breached the Settlement Agreement by failing to promote him to any of the thirty-three positions he applied for.  *See* Compl. ¶ 26.  The Settlement Agreement, however, provides only that the Postal Service will not impose any restrictions on Mr. Jain's ability to apply for craft or management positions other than those contained in the relevant Employee Labor and Relations Manual and collective bargaining agreement.  *See* SJ Motion, Ex. A at 2.  The clear and unambiguous terms of the Settlement Agreement entitled Mr. Jain to *apply* for these positions but did not *require* the Postal Service to promote him.  Mr. Jain's construction of this term in the Settlement Agreement is not only legally flawed, but is incoherent as a practical

matter: why would the Postal Service contractually obligate itself to promote an employee that was discovered to have engaged in fraud?  As explained above, the fact that Mr. Jain was not selected for promotion does not create contractual liability for the Postal Service under the Settlement Agreement.

Second, Mr. Jain alleges that the Postal Service breached the "no restriction" clause in the Settlement Agreement by interfering with or otherwise placing "restrictions on Plaintiff's ability to get other positions within the USPS."  *See* Compl., ¶¶ 16-17.  Mr. Jain has not offered any evidence indicating that restrictions were placed on his ability to apply for higher-level roles within the Postal Service.  As the district court in *Tulino* concluded, Mr. Jain failed to rebut the Postal Service's "legitimate, non-discriminatory explanations" for why Mr. Jain was not promoted, which was attributable to his recent demotion. *Tulino*, 2025 WL 2774260, at *13.  This Court agrees and finds that Mr. Jain's lack of promotion does not establish a breach of the Settlement Agreement by the Postal Service.

Third, Mr. Jain alleges that the Postal Service breached the Settlement Agreement by failing to expunge from Mr. Jain's employment file the fact that he had been placed on paid administrative leave.  *See* Compl., ¶ 11.  Under the Settlement Agreement, the Postal Service was required to "expunge any and all *discipline* currently in Jain's Official personnel folder."  *See* SJ Motion, Ex. A at 2 (emphasis added).  It is well-settled, however, that being placed on administrative leave without any reduction in pay does not constitute discipline or adverse employment action.  *See, e.g.*, *Henry v. Dep't of Navy*, 902 F.2d 949, 954 (Fed. Cir. 1990) ("Since her pay was not reduced, there is simply no adverse action from which the petitioner can appeal to contest her placement on administrative leave."); *Mattern v. Dep't of Treasury*, 291 F.3d 1366, 1370 (Fed. Cir. 2002) ("Because the pre-removal placement on administrative leave or reassignment to restricted duty were not adverse actions, they are not remediable by the Board under the Back Pay Act."); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (finding that employer's placement of employee on short administrative leave with pay to allow time for internal investigation of complaint in accordance with procedures was not an adverse employment action).

Mr. Jain fourth claim alleges that the Postal Service improperly set his "salary at the top step of level 4, even though Mail Handler top level is level 6."  *See* Compl., ¶ 10.  Mr. Jain appears to claim that he was entitled to a level 6 mail handler role. Under the Settlement Agreement, Mr. Jain "agreed to take a voluntary demotion to the position of Mail handler (full time)" and further agreed to "be paid at the top step of the Mail Handler pay schedule."  SJ Motion, Ex. A at 2.  In turn, a "Mail Handler" within the Postal Service refers to a level 4, basic entry-level mail handler. *Id*., Ex. F at 1.  Mr. Jain has offered no evidence that the parties intended to place Mr. Jain in a level 5 or 6 mail handler role.

This conclusion is further reinforced by the fact that mail handlers at levels 5 and 6 occupy specialized roles, including the ability to operate heavy machinery and equipment. *Id*. at 3 (noting that level 5 mail handlers operate "a jitney, fork-lift or pallet truck, as a qualified licensed driver in the performance of transporting mail within a postal facility.").  Beyond failing to identify any evidence that the parties intended to place him in a level 5 or 6 mail handler role, Mr. Jain has offered no evidence that he possesses the qualifications or specialized skills entitling him to a level 5 or 6 role.

Mr. Jain's fifth claim alleges that the Postal Service breached the Settlement Agreement by "reducing Plaintiff's seniority without explicitly mention[ing] that this would occur in the agreement." *See* Compl., ¶ 14.  This claim fails because Mr. Jain has not identified any provision in the Settlement Agreement prohibiting the Postal Service from reducing his seniority level.  In *Tulino*, the district court concluded that "it is undisputed that Plaintiff voluntarily accepted a downgrade in levels and reduced compensation in exchange for not being terminated from USPS altogether after the agency concluded that Plaintiff engaged in misconduct." *Tulino*, 2025 WL 2774260, at *11.  Further, supervisory positions such as Supervisor of Distribution Operations (Mr. Jain's previous position before his demotion) do not have seniority under the applicable collective bargaining agreement ("CBA") and therefore are placed at an initial seniority level when they are downgraded to a craft position like a mail handler (Mr. Jain's current position).  *See* SJ Motion at 14–15.  More specifically, the CBA between the Postal Service and the National Postal Mail Handlers Union provides that an employee who leaves the bargaining unit and subsequently returns "will begin a new period of seniority if the employee returns from a nonbargaining unit position . . . within the Postal Service, unless the employee returns within 2 years from the date the employee left the unit" with exceptions not applicable here.  *Id.*, Ex. E at Art. 12.2, §§ G7, G7b.

Mr. Jain's sixth and seventh breach claims allege that the Postal Service failed to pay him for the night differential and twenty-hour hours of various appearances. *See* Compl., ¶¶ 4, 9.  These claims fail because the record demonstrates that the Postal Service has already paid these amounts to Mr. Jain.  The Settlement Agreement requires the Postal Service to pay Mr. Jain "any and all night differential to which he was entitled by virtue of his being on Administrative Leave from pay period 23 of FY 2015 up until his return to work" and "24 hours of pay for the various appearances." *See* SJ Motion, Ex. A at 2–3.  The record shows that the Postal Service has already processed any back-pay payments to which Mr. Jain was entitled.  *Id.*, Ex. E at 3 ("Back Pay Report"); s*ee also* SJ Motion at 15.  The Court finds no evidence that the Postal Service still owes Mr. Jain the back pay amounts that Mr. Jain apparently seeks through these two claims.

The Court likewise finds that Mr. Jain's remaining three breach claims cannot survive dismissal.  Mr. Jain's eighth claim—alleging that the Postal Service breached the Settlement Agreement by failing to "pay 46 hours of annual leave as a lump sum," Compl., ¶¶ 4, 26—must be dismissed because lump-sum payments can only be paid out under applicable law for accrued leave to employees separating from the agency.  *See* SJ Motion at 20; ELM 55 § 512.73.  In any event, Mr. Jain does not dispute that those forty-six hours of annual leave have been credited to his balance of accrued leave.  *Id.* at 16.  Mr. Jain's ninth claim alleging (at Compl., ¶ 18) that the Postal Service violated the confidentiality provisions of the Settlement Agreement must be dismissed because Mr. Jain has offered no evidence that the Postal Service disclosed confidential information covered by the Settlement Agreement.  Finally, the Court also dismisses Mr. Jain's remaining claim alleging that the Postal Service failed to pay him vacation leave at the rate of his previous supervisory position.  *See* Compl., ¶ 12.  As the government points out, the Settlement Agreement did not require the Postal Service to pay Mr. Jain at the rate an employee was earning when the employee accrued the leave.  *See* SJ Motion at 21–22.  The Postal Service paid Mr. Jain at the rate he was earning at the time he took the vacation leave.  *Id.*

## V.   CONCLUSION

For the foregoing reasons, the Court finds that the Settlement Agreement is a valid, binding, and enforceable contract and that no evidence has been offered showing that the Postal Service breached the terms of the Settlement Agreement.   The Court accordingly **GRANTS** the government's motion for summary judgment, ECF No. 113, and **DISMISSES** Mr. Jain's complaint, ECF No. 67, **WITH PREJUDICE** under RCFC 56.   After concluding that subject-matter jurisdiction exists, the Court **VACATES** its prior order, Doc. No. 115, requesting supplemental briefing.   No costs.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge